UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

JAMES A. MENTEK, JR.,

Plaintiff,

v.

Warden HOYT A. BRILL,
Chief PATRICK O'MALLEY,
Unit Mgr. BARB SEIDL,
Case Mgr. MGR. OPSAL,
Sgt. RIVERS,
Sgt. KOOSMAN, and
CORRECTIONS CORPORATION
OF AMERICA,

Defendants.

Civil No. 00-1248 (DSD/JMM)

REPORT AND RECOMMENDATION

Plaintiff, a prisoner at the Prairie Correctional Facility in Appleton, Minnesota, ("PCF"), has filed a civil rights action under 42 U.S.C. § 1983. He is attempting to sue various prison officials at PCF, as well as the corporation that operates the prison, claiming that they violated his federal constitutional rights by holding him in segregated confinement during his first four days at PCF. The matter is properly before the undersigned Magistrate Judge for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1. For the reasons discussed below, the Court finds that Plaintiff has failed to state any claim on which relief can be granted, and that the action must therefore be summarily dismissed pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c)(1).

FILED 5/31/00
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD________
DEPUTY CLERK________

## I. BACKGROUND

According to Plaintiff's Complaint, he was transferred to PCF from another prison facility in March 2000. He arrived at PCF on March 6, 2000, and was given a medical screening. Immediately thereafter he was "placed into punitive segregation," which evidently involved some form of segregated confinement. (Complaint, [Docket No. 1], p. 7.) Although Plaintiff allegedly asked several of the Defendants about the reason for his segregated confinement, his questions were never answered to his satisfaction. Four days later, Plaintiff was released from segregated confinement and returned to the general prison population.

Aside from the expectable inconvenience and relative discomfort of segregated confinement, Plaintiff has not identified any harmful effects of spending his first four days at PCF in so-called "punitive segregation."[1] Nevertheless, he is presently attempting to sue Defendants for allegedly violating his federal constitutional rights. He is seeking a declaratory judgment and injunctive relief, (even though there is no indication that the current conditions of his confinement are improper in any respect), as well as both compensatory and punitive damages.

## II. DISCUSSION

Because Plaintiff is a prisoner who is seeking redress from individuals and a corporate entity who presumably should be treated as governmental agents for purposes

[1] Although Plaintiff repeatedly uses the term "punitive segregation" to describe his status during his first four days at PCF, he has alleged no facts suggesting that his restricted confinement was attributable to anything other than typical administrative intake policies.

of this lawsuit,[2] his pleading must be screened in accordance with the procedures prescribed by 28 U.S.C. § 1915A, which is part of the Prison Litigation Reform Act of 1995. Section 1915A requires federal courts to screen the pleadings in every prisoner civil rights action against such Defendants "before docketing, if feasible or, in any event, as soon as practicable after docketing." 28 U.S.C. § 1915A(a). The Court must determine which aspects of the pleading are actionable and should be allowed to proceed. To the extent that the pleading, on its face, fails to state a cognizable claim, it must be dismissed. 28 U.S.C. § 1915A(b)(1). In the instant case, the Court finds that Plaintiff has failed to state any claim on which relief can be granted, and that his action must therefore be summarily dismissed.[3]

---

[2] Parties cannot be sued under the federal civil rights laws unless they are considered to be "state actors." See West v. Atkins, 487 U.S. 42, 48 (1988) (to state an actionable § 1983 claim, the plaintiff must allege that the defendant violated his constitutional rights while acting under color of state law). Therefore, although Plaintiff's Complaint may not expressly allege that Defendants are governmental entities or employees, his civil rights claims are obviously predicated on the expectation that they will be treated as governmental agents for purposes of this lawsuit, (even though PCF is a privately operated prison).

[3] Even if § 1915A were not applicable here, Plaintiff's Complaint would still be subject to sua sponte dismissal pursuant to 42 U.S.C. § 1997e(c)(1), which provides that

> "[t]he court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under 42 U.S.C. § 1983, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief."

Plaintiff claims that Defendants violated his constitutional rights by placing him in segregated confinement upon his arrival at PCF without affording him the benefits of due process.[4] To maintain an actionable due process claim, a prisoner must allege, (and ultimately prove), that he has been deprived of some constitutionally protected interest. "A due process claim is cognizable only if there is a recognized liberty or property interest at stake." Ragan v. Lynch, 113 F.3d 875, 876 (8th Cir. 1997). Therefore, the instant Plaintiff cannot maintain a due process claim based on his segregated confinement, unless he can establish that he had a constitutionally protected liberty interest in joining the general prison population immediately upon his arrival at PCF.[5]

---

[4] It appears that Plaintiff may also be attempting to sue Defendants for some alleged breach of a "licensing agreement" between the Minnesota Department of Corrections and the Corrections Corporation of America. Any such "breach of contract" claim that he may be attempting to maintain is plainly frivolous, as there are no allegations suggesting that Plaintiff is a party to any "licensing agreement," or that he otherwise has standing to attempt to enforce its alleged terms and conditions.

The Court further notes that Plaintiff's Complaint includes several unexplained references to the Freedom of Information Act. 5 U.S.C. § 551 et seq. Any claims that he may be attempting to bring under that Act must also be viewed as frivolous, as there are no allegations suggesting that any of the Defendants is a federal agency covered by the Act.

Nor can any actionable claim be found in Plaintiff's unexplained references to "false imprisonment." If Plaintiff believes that his incarceration is somehow illegal, he will have to pursue a habeas corpus action to obtain relief in federal court. See Preiser v. Rodriguez, 411 U.S. 475 (1973); Heck v. Humphrey, 512 U.S. 477 (1994).

[5] The Complaint includes a handful of conclusory allegations suggesting that Plaintiff was deprived of certain property interests without due process of law. However, the Complaint does not describe any specific property that has been taken from Plaintiff, (or who allegedly took it). More significantly, the Complaint does not allege that there are no post-deprivation remedies available to Plaintiff by which he could assert his property-deprivation claim. Thus, Plaintiff's Complaint fails to state an actionable property-deprivation due process claim. See Hudson v. Palmer, 468 U.S. 517, 533 (1984) (the

An actionable liberty interest will be found, and the protections of due process will therefore come into play, only when a prisoner has shown that he has suffered the type of unusual hardship or dramatic departure from ordinary prison life that is contemplated in Sandin v. Conner, 515 U.S. 472 (1995). In that case, the Supreme Court held that a prisoner cannot sustain a due process claim unless he can show that he has suffered an "atypical and significant hardship... in relation to the ordinary incidents of prison life." Id. at 484. Our Court of Appeals has explained that, under Sandin, prisoner due process rights are implicated only when there have been "deprivations which work such major disruptions in a prisoner's environment and life that they present dramatic departures from the basic conditions and ordinary incidents of prison sentences." Moorman v. Thalacker, 83 F.3d 970, 972 (8th Cir. 1996) (emphasis added).

An occasional brief stint in segregated confinement -- such as the four-day layover described in Plaintiff's Complaint -- is a fully expectable aspect of prison life. Such occurrences cannot be viewed as an "atypical and significant hardship," for purposes of determining whether Plaintiff has been deprived of a constitutionally protected liberty interest. Sandin itself clearly indicates as much. The plaintiff in that case was required to spend 30 days in segregated confinement -- far longer than the four days at issue here. Yet the Supreme Court found the plaintiff's brief term of isolated confinement was not the type of unusual or dramatic hardship that would implicate a constitutionally protected liberty interest. 515 U.S. at 486.

---

"unauthorized intentional deprivation" of a prisoner's property by a prison official "does not constitute a violation of the procedural requirements of the Due Process Clause... if a meaningful post-deprivation remedy for the loss is available").

Given the Supreme Court's holding in Sandin, as well as the rulings in many other federal court cases decided thereafter,[6] the Court concludes, as a matter of law, that Plaintiff's four-day assignment to segregated confinement does not constitute the type of hardship that would implicate a constitutionally protected liberty interest. It follows that Plaintiff was not entitled to the procedural protections of due process before being placed in so-called "punitive segregation" for such a brief period of time. He has therefore failed to plead an actionable due process claim.

## III. CONCLUSION

For the reasons discussed above, the Court concludes that Plaintiff's Complaint fails to state a claim on which relief can be granted. It is therefore recommended that this action be summarily dismissed pursuant to 28 U.S.C. § 1915A(b)(1), and 42 U.S.C. § 1997e(c)(1) (see footnote 3, supra).

---

[6] Cases decided after Sandin show that even periods of confinement much longer than 30 days generally will not support an actionable due process claim. See Wilson v. Harper, 949 F.Supp. 714, 723 (S.D.Iowa 1996) (eleven months in "administrative segregation-type conditions" did not constitute the type of hardship that would support a due process claim); Stone-Bey v. Barnes, 913 F.Supp. 1226, 1233-34 (N.D.Ind. 1996) (one year in segregated confinement does not implicate a protected liberty interest), vacated on other grounds, 120 F.3d 718 (7th Cir. 1997); Marino v. Klages, 973 F.Supp. 275, 278 (N.D.N.Y. 1997)(noting that "district courts in the Second Circuit have generally found that any SHU [segregated housing unit] confinement under a year in time is not an atypical or significant hardship on prisoners"). It also is worth noting that in two unpublished (and therefore non-precedential) opinions, the Eighth Circuit found that periods of segregated confinement much longer than the four days at issue here did not constitute an atypical and unusual hardship. Howard v. Collins, No. 97-1642 (8th Cir. 1997), 1997 WL 710314 (eight month stint in "ad seg" would not support due process claim); Driscoll v. Youngman, No. 95-4037 (8th Cir. 1997), 1997 WL 581072 (135 days in disciplinary and administrative segregation would not support due process claim).

## IV. RECOMMENDATION.

Based upon the above, and upon all the files, records, and proceedings herein,

**IT IS RECOMMENDED** that:

This action be summarily DISMISSED pursuant to 28 U.S.C. § 1915A(b)(1) and 42 U.S.C. § 1997e(c)(1).

Dated: May 30, 2000

JOHN M. MASON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before June 14, 2000, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.